# IN THE SUPREME COURT OF IOWA

No. 56 / 04-1724

Filed November 30, 2007

**DENNIS L. CAWTHORN,**

    Appellant,

vs.

**CATHOLIC HEALTH INITIATIVES IOWA CORP.** d/b/a **MERCY HOSPITAL MEDICAL CENTER,** a Corporation,

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Artis Reis, Judge.

Plaintiff in medical malpractice case appeals from district court's order for conditional new trial and rejection of his claim for punitive damages. The defendant cross-appeals from the district court's ruling on evidence issues. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED ON CROSS-APPEAL; CASE REMANDED.**

Gary R. Fischer of Dreher, Simpson & Jensen, P.C., Des Moines, and Verle W. Norris, Corydon, for appellant.

Thomas A. Finley, Jack Hilmes, and Kami M. Lang of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, and Roberta M. Anderson of Schroeder & Anderson, Mason City, for appellee.

**LARSON**, **Justice**.

Dennis L. Cawthorn sued Catholic Health Initiatives Iowa Corp. d/b/a Mercy Hospital Medical Center, as well as other defendants who were later dismissed (including Dr. Daniel Miulli), for damages arising out of the defendants' treatment of the plaintiff. The jury returned a substantial verdict for the plaintiff and allocated seventy percent of the fault to Dr. Daniel Miulli, the plaintiff's treating doctor (who had settled prior to trial), and thirty percent to Mercy. Mercy moved for a new trial on the ground the verdict was excessive. The district court ordered a new trial unless the plaintiff agreed to a remittitur reducing the verdict of $10,590,000 to $1,190,000. Cawthorn appealed, contending the trial court abused its discretion in ordering the conditional new trial and in refusing to submit his claim for punitive damages. Mercy cross-appealed, claiming error in the admission of evidence of an independent review of Dr. Miulli's qualifications by the Iowa Board of Medical Examiners (IBME). The court of appeals affirmed on Cawthorn's appeal, but did not address Mercy's cross-appeal. We vacate the decision of the court of appeals, reverse on Mercy's cross-appeal, and remand for a new trial.

### I. Facts.

Dennis Cawthorn was treated at Mercy in May 2000 for a work-related injury to his spine. Dr. Miulli performed surgery, but Cawthorn's pain persisted. On May 22, 2000, Cawthorn underwent a second surgery to remove disc and bone fragments that were missed during the first surgery. After the second surgery, Cawthorn's pain worsened, and he was readmitted to Mercy in June, suffering from pain, cold sweats, a low-grade fever, and an "oozing drainage" at the point of the prior surgeries. Cawthorn was again evaluated by Dr. Miulli who, instead of

performing recommended tests for infection, relied on week-old tests showing no infection. He prescribed pain medication. Cawthorn was released after four days, but his pain persisted at an eight on a scale of one to ten.

## II. The Issues.

The appeal and cross-appeal raise three issues: the court's conditional order for a new trial, its refusal to submit the issue of punitive damages, and the court's admission of evidence concerning the IBME investigation of Dr. Miulli and resulting disciplinary hearing. The IBME investigation had been prompted by concerns expressed to the IBME by doctors who had doubts about Dr. Miulli's care of patients in cases unrelated to Cawthorn's. An issue initially raised by Mercy in the trial court, whether Iowa recognizes a claim against a hospital for negligent credentialing of doctors practicing in the hospital, is not an issue on appeal. We reverse and remand on the evidentiary issue raised in Mercy's cross-appeal and, therefore, need not address the district court's order for new trial based on the alleged excessiveness of the verdict.

## III. The Cross-Appeal.

Mercy cross-appealed from the district court's admission of detailed evidence of an investigation of Dr. Miulli by the IBME. Mercy argues that this evidence was confidential under Iowa Code section 272C.6(4) (1999) and privileged under section 147.135. Mercy also argues that any probative value of this information was outweighed by the prejudice inherent in its admission. *See* Iowa R. Evid. 5.403.

Cawthorn's purpose in producing evidence of the disciplinary investigation was apparently two-fold: to show that Mercy should have been aware that Dr. Miulli was not qualified to perform the surgery on

Cawthorn and to establish willful and wanton disregard for Cawthorn's rights as a patient so as to establish his right to punitive damages.

The plaintiff correctly points out that Dr. Miulli waived his right to confidentiality under section 272C.6(4) for purposes of the disciplinary proceedings. However, section 272C.6(4) bars the admission of investigative materials and information in any proceeding other than licensee discipline:

> In order to assure a free flow of information for accomplishing the purposes of this section, and notwithstanding section 622.10, all complaint files, investigation files, other investigation reports, and *other investigative information* in the possession of a licensing board or peer review committee acting under the authority of a licensing board or its employees or agents which relates to licensee discipline are privileged and confidential, and are not subject to discovery, subpoena, or other means of legal compulsion for their release to a person other than the licensee and the boards, their employees and agents involved in licensee discipline, *and are not admissible in evidence in a judicial or administrative proceeding other than the proceeding involving licensee discipline.*

(Emphasis added.)

As we have said,

> [i]t is obvious from the context, stated purpose and language of section [272C.6(4)] that the disclosure exception applies only when a disciplinary proceeding has been initiated. First, the statute makes a consistent distinction between investigation of a complaint and a disciplinary proceeding. Second, subsection 4 is part of a section dealing only with disciplinary hearings. Third, the stated objective of subsection 4 to assure a free flow of information for complaint and investigative purposes would be defeated if licensees had access to complaint files in these circumstances. Finally, disclosure for use of the information in private litigation would nullify the statutory bar to use of the information "in any judicial or administrative proceeding other than the proceeding involving licensee discipline."

*Doe v. Iowa State Bd. of Physical Therapy*, 320 N.W.2d 557, 559–60 (Iowa 1982).

At trial, IBME's investigator testified at length about Dr. Miulli's qualifications as a surgeon. However, Mercy's counsel was not permitted to cross-examine her on the basis of her reports prepared during the investigation. The reason for this was that the confidential reports had been subjected to a protective order in the disciplinary case, and the district judge in Cawthorn's trial denied Mercy access to them.

We have not previously considered section 272C.6(4) in light of circumstances such as those in this case. However, the statute's provision that it is intended to "assure a free flow of information" suggests that confidentiality should protect the source of information as well as the person being investigated. Even more important is the statute's express prohibition from admission into evidence of any investigative information in a "judicial or administrative proceeding" other than the disciplinary case. We hold that section 272C.6(4) prohibits admission of such investigative evidence and that introduction of the IBME investigation, including the transcript of the IBME hearing that was introduced at the trial, was improper. Further, we believe the impact of this evidence was so great as to require a new trial and the exclusion of all evidence of the IBME investigation.

Because we order a new trial on this issue raised in Mercy's cross-appeal, we do not address the plaintiff's contention that the trial court erred in ordering a new trial based on alleged excessiveness of the verdict.

## IV. Punitive Damages.

The district court granted Mercy Hospital's motion for directed verdict on Cawthorn's punitive-damage claim and denied his motion for new trial on punitive damages. Because the submissibility of punitive damages will likely arise again on retrial, we will address that issue now.

We review a district court's ruling on a motion for directed verdict for errors at law. Iowa R. App. P. 6.4; *Riniker v. Wilson*, 623 N.W.2d 220, 230 (Iowa Ct. App. 2000). "Where no substantial evidence exists to support each element of a plaintiff's claim, the court may sustain a motion for directed verdict. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Riniker*, 623 N.W.2d at 230 (citations omitted). The evidence is viewed in the light most favorable to the party against whom the motion was directed. *Id.*

Iowa Code section 668A.1 (2003) governs the award of punitive damages. Punitive damages may only be awarded when the plaintiff has shown "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(*a*). Willful and wanton conduct is shown when an

> "actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences."

*Kiesau v. Bantz*, 686 N.W.2d 164, 173 (Iowa 2004) (quoting *Vlotho v. Hardin County*, 509 N.W.2d 350, 356 (Iowa 1993)). Punitive damages serve as a form of punishment, and as such, mere negligent conduct is not sufficient to support such a claim. *McClure v. Walgreen Co.*, 613 N.W.2d 225, 230–31 (Iowa 2000). Punitive damages are only recoverable when the defendant acted with actual or legal malice.

> "Actual malice may be shown by such things as personal spite, hatred, or ill-will and legal malice may be shown by wrongful conduct committed with a willful or reckless disregard for the rights of another." . . . "Thus, merely objectionable conduct is insufficient. . . . To receive punitive

damages, plaintiff must offer evidence of defendant's persistent course of conduct to show that the defendant acted with no care and with disregard to the consequences of those acts."

*Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005) (quoting *Jones v. Lake Park Care Ctr., Inc.,* 569 N.W.2d 369, 378 (Iowa 1997), and *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 153, 156 (Iowa 1993)) (citation omitted).

Cawthorn does not contend that Mercy had any actual malice toward him, but he argues that the record was sufficient for the court to submit punitive damages on the basis of legal malice. We have defined legal malice as wrongful conduct, committed with a willful or reckless disregard for the rights of another. *Wolf*, 690 N.W.2d at 893.

Cawthorn's claim for punitive damages rests on his contention that Mercy Hospital was aware that Dr. Miulli was likely to injure a patient through negligent treatment. Though evidence certainly exists that Mercy Hospital was aware that Dr. Miulli's competency was at issue, the evidence does not support a finding of willful and wanton conduct, as required by section 668A.1(1)(*a*).

Much of Cawthorn's punitive-damage claim is based on the fact that the Iowa Board of Medical Examiners investigated Dr. Miulli and, ultimately, suspended his license to practice medicine. However, the substance of the investigation was not made known to Mercy until after Dr. Miulli treated Cawthorn. Peer review of Dr. Miulli prior to his treatment of Cawthorn was generally positive. Prior to Cawthorn's treatment by Dr. Miulli, Mercy had received at least one complaint about Dr. Miulli's care, but an internal peer review committee did not identify any practice problems regarding infection—the cause of the injuries

suffered by Cawthorn. Further, Mercy took steps to monitor Dr. Miulli's practice to ensure the safety of their patients.

Viewing the evidence in the light most favorable to Cawthorn's punitive-damage claim, we do not believe a reasonable fact finder could find

> by a preponderance of clear, convincing, and satisfactory evidence [that] the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another.

Iowa Code § 668A.1(1)(*a*). In other words, we do not find evidence to support a claim that Mercy had intentionally done an act of such unreasonable character as to make it highly probable that harm would follow or that Mercy's actions were accompanied by a conscious indifference to the consequences. *See Kiesau*, 686 N.W.2d at 173.

We affirm the district court's rulings denying Cawthorn's submission of his punitive-damages claim to the jury and denying a new trial on that issue. We reverse on the cross-appeal and remand for a new trial.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED ON CROSS-APPEAL; CASE REMANDED.**

All justices concur except Hecht, J., who takes no part.