Daniel Alan DAY and Nicole Leigh Day, individually and on behalf of their children Gabriel Alexander Day and Elijah Patrick Day, Plaintiffs–Appellants,

v.

THE FINLEY HOSPITAL, Defendant–Appellee.

No. 08–0171.

Court of Appeals of Iowa.

May 29, 2009.

Timothy S. White and Daniel M. Key of White & Johnson, P.C., Cedar Rapids, for appellant.

Nancy J. Penner, Constance Alt, and Mark Zaiger of Shuttleworth & Ingersoll P.L.C., Cedar Rapids, for appellee.

Heard by VAITHESWARAN, P.J., and POTTERFIELD and MANSFIELD, JJ.

MANSFIELD, J.

This case presents two questions of statutory interpretation. Daniel Day and members of his family appeal an adverse jury verdict in their negligent credentialing case against The Finley Hospital (Hospital). Day developed osteomyelitis after Dr. Michael Arnz, a podiatrist, performed ankle surgery on him at the Hospital, utilizing an external fixation frame that required drilling of holes through the tibia. Day contends the Hospital was negligent in allowing Dr. Arnz to perform this surgery because it exceeded the lawful scope of podiatry practice and because Dr. Arnz was not properly qualified.

During the course of discovery, the district court refused to allow Day to have access to records in Dr. Arnz's credentialing file at the Hospital, citing Iowa Code section 147.135(2) (2005). Also, at the close of trial, the district court instructed the jury that Dr. Arnz had not practiced outside the lawful scope of podiatry as defined in section 149.1, thus eliminating this part of Day's case. Thereafter, the jury returned a verdict in favor of the Hospital. Day argues that the district court's interpretations of sections 147.135(2) and 149.1 were both erroneous. Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The trial testimony revealed that Day suffers from a congenital ailment known as Charcot–Marie–Tooth disease. This neurological condition can lead to deformities in the feet. On June 17, 2004, Day met with Dr. Arnz to discuss having surgery on his right foot in order to correct certain effects of his disease.

Dr. Arnz raised the possibility of using an external fixator instead of a traditional cast for stabilization. This fixator requires holes to be drilled through the tibia,[1] and pins to be inserted. This creates an in-

---

1. The tibia, or shinbone, is the larger bone that connects the knee to the ankle.

creased possibility of infection. Dr. Arnz had assisted physician instructors in the use of external fixators while in his residency and had just attended a training session on the use of external frames. With these exceptions, however, his experience had been with traditional methods of casting and stabilization. Nonetheless, the Hospital granted him privileges to perform this kind of surgery. Day's surgery was only the second time Dr. Arnz had applied a circular frame by himself.

On July 14, 2004, Dr. Arnz performed surgery on Day's right foot at the Hospital. Following the surgery, Day developed a postoperative infection in his tibia, which developed into osteomyelitis, a bone infection, resulting in serious complications.

On May 18, 2006, Day filed a medical malpractice case naming Dr. Arnz, Dubuque Podiatry, P.C., and the Hospital as defendants. Prior to trial, Dr. Arnz and Dubuque Podiatry settled with Day, and those claims were dismissed. The remaining claim was a negligent credentialing claim against the Hospital. Although our supreme court has not yet expressly recognized negligent credentialing claims, a number of other jurisdictions have. The district court denied the Hospital's motion for summary judgment on that claim.

During the discovery phase of the case, Day tried repeatedly to compel the production of documents in the Hospital's credentialing file for Dr. Arnz. The court denied Day's motions, citing Iowa Code section 147.135.

On December 4, 2007, a jury trial began. At the conclusion of testimony, the district court determined Dr. Arnz had not practiced outside the scope of podiatry as defined by Iowa Code section 149.1 and so advised the jury. On December 21, 2007, the jury returned a verdict in favor of the Hospital. Day moved for a new trial,

which the district court denied on January 18, 2008.

On appeal, Day asserts: (1) the district court erred in finding Iowa law permits podiatrists to perform surgery on the medial tibia to facilitate foot and ankle surgery and (2) the district court abused its discretion in denying the discovery of credentialing files.

## II.  LEGAL ANALYSIS.

We believe both questions raised by this appeal are straightforward matters of statutory interpretation, which we review for correction of errors at law, and we resolve both in favor of the Hospital. *State v. Iowa District Ct.*, 730 N.W.2d 677, 679 (Iowa 2007) (review for correction of errors at law). By doing so, we avoid reaching certain other arguments raised by the Hospital in support of the verdict below.

### A.  Definition of Podiatry.

Iowa Code section 149.1(1)(b) defines podiatrists as "Persons who diagnose, prescribe, or prescribe and furnish medicine for ailments of the human foot, or treat such ailments by medical, mechanical, or surgical treatments." Section 149.1(2) adds that "[a]s used in this chapter, 'human foot' means the ankle and soft tissue which insert into the foot as well as the foot."

Day's position is that these provisions did not authorize Dr. Arnz to drill holes into his tibia, as part of a procedure for treating his foot. We respectfully disagree for two reasons. First, the statute by its literal terms encompasses "treat[ing] . . . ailments [of the human foot and ankle] by medical, mechanical, or surgical treatments." That is what Dr. Arnz did here. He was treating Day's foot. The fact that this treatment involved drilling holes in the tibia for a fixation device does not alter the analysis, because Dr. Arnz was not

*treating* the tibia. As the Hospital points out, if Day's position were correct, then logically podiatrists could not prescribe medications for the foot if the patient takes them orally. Nor could podiatrists provide traditional leg casts for their patients undergoing foot or ankle surgery.

■ Second, in this case, Day asked the Iowa Board of Podiatry Examiners for its opinion. The board concluded that "if the more proximal tibia is being used for treatment of foot or ankle condition," this is within podiatric practice. The board?s letter is not a formal agency action, and we do not believe interpretation of section 147.1 has been clearly vested by statute in the board. *See* Iowa Code § 17A.19(10). Thus, we are not bound by the board's views. Nevertheless, the precedents caution us to give some, limited deference to agency interpretations of law within their areas of expertise. *Madrid Home for the Aging v. Iowa Dep't of Human Servs.*, 557 N.W.2d 507, 510–11 (Iowa 1996). Thus, we believe it is appropriate to give consideration to the board's opinion. *See Jaramillo v. Morris,* 50 Wash.App. 822, 750 P.2d 1301, 1307 (1988) (giving deference to the Washington State Podiatry Board's opinions regarding the permissible scope of podiatry because of the WSPB's expertise and the pervasive scope of its regulation).

Accordingly, the district court did not err in determining that Dr. Arnz's use of external fixation was within the scope of lawful podiatry practice.

**B. Discovery of Credentialing File.**

■ Day's other ground for appeal is that the district court should have ordered the production of at least portions of Day's credentialing file with the Hospital. Day contends that, at a minimum, the district court should have required the Hospital to produce documents that were merely *gathered* as part of the credentialing process, rather than *generated* in that process. Again, we differ with Day's interpretation of the relevant statute.

Iowa Code section 147.135(2) provides:

As used in this subsection, *"peer review records"* means all complaint files, investigation files, reports, and other investigative information relating to licensee discipline or professional competence in the possession of a peer review committee or an employee of a peer review committee.... Peer review records are privileged and confidential, are not subject to discovery, subpoena, or other means of legal compulsion for release to a person other than an affected licensee or a peer review committee and are not admissible in evidence in a judicial or administrative proceeding other than a proceeding involving licensee discipline or a proceeding brought by a licensee who is the subject of a peer review record and whose competence is at issue.... Information or documents discoverable from sources other than the peer review committee do not become nondiscoverable from the other sources merely because they are made available to or are in the possession of a peer review committee.

We believe the language of the statute is clear and unambiguous and extends to all "investigation files," "reports," and "other investigative information" relating to Dr. Arnz in the custody of the peer review committee, whether the information was generated by the peer review committee or not. Indeed, the statute expressly contemplates that such information might be discoverable "from other sources," but directs the party seeking the information to those other sources.

Furthermore, the supreme court has stated that the statutory privilege in Iowa Code section 147.135(2) is "broad." *Caro-*

*lan v. Hill,* 553 N.W.2d 882, 886 (Iowa 1996); *Hutchinson v. Smith Labs., Inc.,* 392 N.W.2d 139, 141 (Iowa 1986).

Day also argues that it would be impractical and absurd to have negligent credentialing claims without allowing plaintiffs access to credentialing files. This, however, puts the cart before the horse. The legislature has spoken and has directed that peer review files be kept confidential, even when requested in litigation. The legislature has never approved negligent credentialing claims. It makes no sense to argue that express statutory language should yield to the needs of a cause of action that the legislature has never recognized.

Furthermore, Iowa is not the only jurisdiction where this situation has arisen. In Florida, the appellate courts have

> consistently construed the peer review privilege broadly and declined to recognize an exception to [the peer review confidentiality statute] even where the plaintiffs were suing for negligent credentialing and faced difficulty in proving their claim without access to peer review and hospital privilege documents.

*Columbia/JFK Med. Ctr. Ltd. P'ship v. Sanguonchitte,* 920 So.2d 711, 712 (Fla. Dist.Ct.App.2006); *accord Palm Beach Gardens Cmty. Hosp., Inc. v. O'Brien,* 651 So.2d 783, 784 (Fla.Dist.Ct.App.1995); *see also Brownwood Reg'l Hosp. v. Eleventh Ct. of Appeals,* 927 S.W.2d 24, 27 (Tex. 1996) (holding that a hospital's peer review records are not discoverable despite the plaintiffs' claim that this "severely compromises their ability to present evidence in support of their negligent credentialing claim"); *Snell v. Superior Court,* 158 Cal. App.3d 44, 204 Cal.Rptr. 200, 202 (1984) (holding that the "relevance of a hospital's records to show its conduct, whether careful or negligent, cannot serve as an implied exception to the clear, absolute immunity legislatively established in [the peer review confidentiality statute]"). Thus, other jurisdictions have confronted the same issue that we confront in this case and resolved it the same way.

Also, as the Hospital correctly points out, the privilege works both ways. It denies Day some material that might be helpful to his case, while also denying the Hospital some material that might assist its defense.

For the foregoing reasons, we affirm the decision of the district court.

**AFFIRMED.**