# IN THE SUPREME COURT OF IOWA

No. 10–1013

Filed December 2, 2011

**DENNIS L. CAWTHORN,**

Appellant,

vs.

**CATHOLIC HEALTH INITIATIVES IOWA CORP.**
d/b/a **MERCY HOSPITAL MEDICAL CENTER,**
a corporation,

Appellee.

---

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble and Douglas F. Staskal, Judges.

Dennis Cawthorn appeals the district court's grant of summary judgment to Catholic Health Initiatives Iowa Corp. d/b/a Mercy Hospital Medical Center. **AFFIRMED.**

Gary R. Fischer of Simpson, Jensen, Abels, Fischer & Bouslog, P.C., Des Moines, and Verle W. Norris, Corydon, for appellant.

Thomas A. Finley, John (Jack) D. Hilmes, and Eric G. Hoch of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellee.

**MANSFIELD, Justice.**

This case comes before us for the second time. We must determine whether a hospital that previously produced a physician's credentialing file and relied on that file at trial may object to the use of those documents following our reversal and remand for retrial. We conclude the law of the case did not bar the hospital from changing course because our earlier opinion did not expressly or impliedly decide the admissibility of the credentialing file. We also find that Iowa Code section 147.135(2) (2009) sets forth not only a privilege, but also a separate rule of inadmissibility, so principles of waiver that might be applicable in other contexts do not govern here.

For these reasons, we find that neither law of the case nor waiver foreclosed the hospital and the district court from revisiting the admissibility of the credentialing file. Hence, we affirm the district court's order granting summary judgment to the hospital.

## I. Background Facts and Proceedings.

Dr. Daniel Miulli performed two back surgeries on Dennis Cawthorn in May 2000. After Cawthorn suffered complications from those surgeries, he filed suit in May 2002 against Dr. Miulli, Catholic Health Initiatives Iowa Corp. d/b/a Mercy Hospital Medical Center (Mercy), and several other defendants. Cawthorn's petition set forth claims of medical malpractice against Dr. Miulli and negligent credentialing against Mercy. In particular, Cawthorn alleged Mercy failed to investigate Miulli's qualifications properly, negligently extended surgical privileges to Miulli, and allowed Miulli to continue to perform surgeries after having reason to know that extensive questions had been raised and existed concerning the appropriateness of some of the surgeries and procedures he was performing.

On February 2, 2004, Cawthorn served a request for production on Mercy for "a complete copy of Dr. Miulli's credential file." On March 31, 2004, Mercy responded:

> This Request is objected to because it requires the production of documents which are subject to the "peer review" privilege in Iowa Code § 147.135. Without waiving said objection, this defendant affirmatively states that it is named as a co-defendant with Defendant Dr. Miulli in another case—Polk County No. C.L. 87281 [the *Christy* case] involving similar allegations against this Defendant re: negligent credentialing/supervision. Similar discovery was requested and resisted. The Honorable Richard G. Blane entered his Order Compelling Discovery dated May 22, 2003. This Defendant filed its "Compliance Report" (and privilege log) and furnished the documents from Dr. Miulli's credential file and other requested information which Judge Blane found were non-privileged. The Order, Compliance Report/privilege log and documents are being provided.[1]

Thus, consistent with Judge Blane's order in the *Christy* case, Mercy produced almost the entire contents of Dr. Miulli's credentialing file in this case. A stipulated protective order had been entered a few days before, providing that all documents produced by Mercy to Cawthorn "shall . . . not . . . be used in any manner or fashion outside the context of this present litigation" and would be destroyed upon termination of the case.

On April 20, 2004, Mercy moved for summary judgment. Mercy argued that Iowa does not recognize a cause of action for negligent credentialing and, alternatively, that Cawthorn had no competent evidence to support such a claim. Mercy supported its motion with a

---

[1]Although Mercy received an unfavorable ruling in the *Christy* case as to the discoverability of Dr. Miulli's credentialing file, Mercy did not seek nor obtain an appellate ruling on the issue. The *Christy* case was disposed of on summary judgment based on the statute of limitations. The plaintiff appealed and this court reversed in part and affirmed in part. *Christy v. Miulli*, 692 N.W.2d 694, 697–98 (Iowa 2005). The peer review protection was neither raised by the parties nor mentioned by this court in the appeal.

number of the documents it had previously produced relating to Dr. Miulli's credentialing. The motion was denied by Judge Blink, the trial judge then presiding over the case.

The case proceeded to trial in late June and early July 2004 before Judge Reis. At trial, Mercy objected to the admission of evidence relating to an Iowa Board of Medical Examiners (IBME) investigation and disciplinary hearing concerning Dr. Miulli. Mercy's objections were overruled and the evidence was admitted. Mercy did not object to the introduction of Dr. Miulli's credentialing file into evidence and, in fact, offered into evidence numerous documents from that file.

The jury returned a verdict in favor of Cawthorn, awarding $10,590,000 in actual damages and allocating thirty percent of the fault to Mercy and seventy percent to Dr. Miulli. The district court ordered a new trial unless Cawthorn agreed to a remittitur reducing the verdict to $1,190,000.

Both parties appealed: Cawthorn argued his claim for punitive damages should have been submitted to the jury, and Mercy argued the IBME evidence should have been excluded. In November 2007, on further review, this court affirmed the district court's refusal to submit Cawthorn's punitive damage claim, but reversed on Mercy's cross-appeal. We concluded the IBME evidence was confidential under section 272C.6(4) and should have been excluded. We remanded the case for a new trial. *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 526 (Iowa 2007). Procedendo issued on January 22, 2008.

In May 2009, the court of appeals decided *Day v. Finley Hospital*, 769 N.W.2d 898, 902 (Iowa Ct. App. 2009), holding that the contents of a hospital's credentialing file fell within the scope of Iowa Code section

147.135's peer review protection, to the extent those documents were in the custody of a peer review committee.

In September 2009, Mercy filed a new motion for summary judgment in this case. Relying on *Day*, Mercy argued the contents of Dr. Miulli's previously produced credentialing file were inadmissible under section 147.135. Without these documents, Mercy maintained that Cawthorn lacked sufficient evidence to establish a prima facie case.

Cawthorn resisted the motion, arguing it was too late for Mercy to be objecting to the admission of the credentialing documents. Cawthorn denied that *Day* was an intervening change in the law. Rather, he argued, "Nothing the Iowa Court of Appeals said in *Day* created new law that made this argument newly available."

On January 11, 2010, the district court[2] ruled on Mercy's summary judgment motion. It stated:

> Defendant is not barred by the doctrines of waiver, estoppel or law of the case from asserting the peer review privilege of Iowa Code Section 147.135 to the admissibility of documents from the credentialing file that it previously produced subject to the objection pursuant to an order entered in a companion case. *Day v. The Finley Hosp.*, 769 N.W.2d 898 (Iowa App. 2009) is an intervening change or clarification of the law entered since the remand that clearly holds such peer review material is inadmissible. See *Springer v. Weeks & Leo Co., Inc.*, 475 N.W.2d 630, 632 (Iowa 1991). The law is constantly developing. Circumstances change with the passage of time. The defendant is not bound [by] the trial strategy of the first trial in a new trial.

However, the district court declined to grant summary judgment to Mercy at that point. As the court explained, "It is appropriate for the trial judge to rule on the admissibility of evidence prior to determining the sufficiency of evidence." Thus, the court allowed Cawthorn time to gather other evidence in support of his negligent credentialing claim,

---

[2]At this point, the case had been assigned to Chief Judge Gamble.

including "evidence gathered by plaintiff from sources other than the credentialing file as well as plaintiff's expert testimony bearing on issues of negligence and proximate cause."

On April 30, 2010, Mercy renewed its summary judgment motion. It argued, "Despite [the] grace period provided by the Court in which Plaintiff was to gather admissible evidence, Mercy is not aware of any further efforts by Plaintiff to obtain any evidence outside of the exhibits he previously offered into evidence at the first trial." Cawthorn resisted the renewed motion by incorporating his earlier resistance. On May 18, 2010, the district court[3] granted Mercy's motion, reasoning as follows:

> There is no doubt that the only evidence proposed by the plaintiff to prove the defendant's alleged negligence fits within the categories of evidence held inadmissible in *Cawthorn* and *Day*. While the trial court's original denial of the defendant's motion for summary judgment appears to be consistent with this conclusion [footnote omitted], it also recognizes the possibility that the plaintiff could generate some other admissible evidence to support his claim, including expert testimony. This possibility appears to be the reason the court denied the summary judgment motion. Now, as the defendant points out, discovery has closed and the plaintiff has failed to uncover or produce any other such evidence. This means that the plaintiff has failed to produce affirmative, admissible evidence that creates a fact issue as to whether the defendant was negligent. Thus, there is no possibility that the plaintiff could prevail at trial and, therefore, the defendant is entitled to summary judgment dismissing the petition.

Cawthorn appeals. He contends that under the doctrine of law of the case, Mercy was precluded from arguing the credentialing documents were inadmissible, and the district court lacked authority to exclude them. Alternatively, Cawthorn argues that Mercy waived its right to object to the admission of the credentialing documents by voluntarily

---

[3]Judge Staskal was now presiding over the matter.

producing them and offering them as evidence in the first trial.

## II. Scope and Standards of Review.

The parties agree that our review of a district court's ruling on a motion for summary judgment is for errors at law. *Kragnes v. City of Des Moines*, 714 N.W.2d 632, 637 (Iowa 2006). Summary judgment is appropriate if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The moving party has the burden to show it is entitled to summary judgment. *Hunter v. City of Des Moines Mun. Hous. Auth.*, 742 N.W.2d 578, 584 (Iowa 2007). We will view the record in the light most favorable to the nonmoving party and will grant that party all reasonable inferences that can be drawn from the record. *Wernimont v. Wernimont*, 686 N.W.2d 186, 189 (Iowa 2004).

However, Cawthorn does not here appeal the district court's conclusion that there was no genuine issue of material fact once the credentialing file was found to be inadmissible. Rather, Cawthorn is challenging the district court's ruling on admissibility. "When the admission of evidence depends on the interpretation of a statute, we review for correction of errors of law." *State v. Palmer*, 554 N.W.2d 859, 864 (Iowa 1996).

## III. Discussion.

**A. Law of the Case.** Both parties relied extensively on Dr. Miulli's credentialing file during the 2004 trial. Cawthorn therefore argues that the law of the case barred Mercy from raising, and the district court from sustaining, an objection to the use of the credentialing file on remand. However, the law of the case doctrine applies only to issues that were raised and reached in the first appeal. *See Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006) (indicating that a " 'question not passed on is not included' under the doctrine" (quoting *In re Lone Tree Cmty. Sch.*

*Dist.*, 159 N.W.2d 522, 526 (Iowa 1968))); *Mass v. Mesic*, 258 Iowa 1301, 1306, 142 N.W.2d 389, 392–93 (1966) (holding that the law of the case doctrine applies "only to those questions that were properly before [the appellate court] for consideration and passed on" and that "[a] question not passed on" may be raised in later proceedings); *State v. Di Paglia*, 248 Iowa 97, 100, 78 N.W.2d 472, 473 (1956) (holding that where the constitutionality of a statute had been determined in a prior appeal, the law of the case barred the defendant from continuing to argue that the statute was unconstitutional, even on new grounds). Here the first appeal simply did not touch upon section 147.135's applicability to the credentialing file, and thus the parties were free to litigate that issue on remand.

Our previous opinion, we believe, was self-explanatory. We considered only two issues: first, whether the IBME investigation should have been admitted; and, second, whether punitive damages should have been submitted to the jury. *Cawthorn*, 743 N.W.2d at 527–30. Neither party asked us to address the admissibility of the credentialing file, and we did not do so. Moreover, while Mercy argued that both section 147.135 and section 272C.6(4) barred the IBME investigation from being admitted, we did not end up considering section 147.135 because we found that section 272C.6(4) by itself precluded the introduction of the IBME investigation. *Id.* at 527–28. At the conclusion of our opinion, we remanded for "a new trial" without further direction. *Id.* at 530.

Thus, on remand the parties and the court were entitled to take a fresh look at matters we had not expressly or impliedly decided, such as the admissibility of the credentialing file under section 147.135(2). *See City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 535 (Iowa 1996) ("Unless the remand limits the issues to be considered, the case should be reviewed in its entirety."); *Mundy v. Olds*, 254 Iowa 1095,

1106, 120 N.W.2d 469, 476 (1963) (" 'Broadly speaking, on a new trial the case is tried de novo and as though there had been no previous trial.' " (quoting 66 C.J.S. *New Trial* § 266)); *see also United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 104 (Iowa 2000) ("Generally, the district court is vested with discretion to direct the course of the case following remand absent specific instructions. Thus, when remand is general, the district court may take action consistent with the appellate decision." (Citation omitted.)).

Of course, the district court must observe and implement both the letter and the spirit of the mandate, *City of Okoboji v. Iowa Dist. Court*, 744 N.W.2d 327, 332 (Iowa 2008), but the district court did so here. Our previous opinion did not address the admissibility of the credentialing file under section 147.135 either directly or by implication.

Cawthorn also argues the district court did not have the authority to grant summary judgment given that the case had been remanded "for a new trial." Cawthorn relies on an 1883 decision of our court, *Kershman v. Swehla*, 62 Iowa 654, 17 N.W. 908 (1883), that followed an 1882 decision of our court in the same proceeding. *Kershman v. Swhela*, 59 Iowa 93, 12 N.W. 807 (1882). In the first *Kershman* decision, we reversed a judgment for the plaintiff entered following a trial, holding the defendant's motion to exclude certain depositions should have been granted. 59 Iowa at 94–95, 12 N.W. at 808. On remand, the defendant apparently argued that a decree should be automatically entered in his favor, since the plaintiff no longer could rely on the depositions. *Kershman*, 62 Iowa at 655, 17 N.W. at 908. The district court denied the defendant's request, and a new trial was held resulting in another verdict for the plaintiff. In the second *Kershman* decision, we upheld the district court's action, explaining:

Upon discovering that errors had been committed, by reason of which the cause could not be tried upon its merits, it was the duty of this court to remand the cause, to the end that the decision of the court below should be corrected. It was neither proper to dismiss plaintiff's action, nor to render a decree for defendant. In case either had been done, justice would have been defeated by a decision without a trial in which the real merits of the controversy were brought before the court for decision. For the same reason, when the cause was remanded, the court below could neither dismiss it nor render a decree for defendant, but was required to try it anew, correcting the errors pointed out in the decision of this court.

*Id.* at 655–56, 17 N.W. at 908.

We do not believe *Kershman* goes as far as Cawthorn wants to take it. As we read our former decision, it simply holds that when we reverse a judgment based on the incorrect admission of evidence and remand for a new trial, the district court should not assume that everything else in the case is static, and enter judgment on that basis, without giving the parties an opportunity to be heard. Indeed, *Kershman* in that regard is consistent with our decision in the present case. On remand, the door generally reopens, except to the extent we have expressly or impliedly closed it by the terms of our decision or the scope of our remand.[4]

Mercy also argues that an exception to the law of the case applies here because *Day* was a change or clarification in the controlling law that occurred following remand. *See United Fire & Cas. Co.*, 612 N.W.2d at 103; *Springer v. Weeks & Leo Co.*, 475 N.W.2d 630, 632 (Iowa 1991). Because we have found the law of the case inapplicable in any event, we need not reach that argument.

---

[4]It also should be kept in mind that current summary judgment practice did not come into being until the twentieth century. Rule 1.981's predecessor, Rule 237, was not adopted until 1943. *See* Iowa Code Ann. Rule 1.981 Official Comment (2002). For this reason as well, it would be a mistake to view *Kershman* as a blanket holding that a summary judgment may not be granted following a remand for retrial.

**B. Waiver.** Cawthorn argues alternatively that Mercy waived any privilege for the credentialing file during the initial round of district court litigation. Iowa Code section 147.135(2) provides in part:

> As used in this subsection, "*peer review records*" means all complaint files, investigation files, reports, and other investigative information relating to licensee discipline or professional competence in the possession of a peer review committee or an employee of a peer review committee. . . . *Peer review records are privileged and confidential, are not subject to discovery, subpoena, or other means of legal compulsion for release to a person other than an affected licensee or a peer review committee, and are not admissible in evidence in a judicial or administrative proceeding other than a proceeding involving licensee discipline or a proceeding brought by a licensee who is the subject of a peer review record and whose competence is at issue.* . . . Information or documents discoverable from sources other than the peer review committee do not become nondiscoverable from the other sources merely because they are made available to or are in the possession of a peer review committee. However, such information relating to licensee discipline may be disclosed to an appropriate licensing authority in any jurisdiction in which the licensee is licensed or has applied for a license. If such information indicates a crime has been committed, the information shall be reported to the proper law enforcement agency. This subsection shall not preclude the discovery of the identification of witnesses or documents known to a peer review committee. Any final written decision and finding of fact by a licensing board in a disciplinary proceeding is a public record. Upon appeal by a licensee of a decision of a board, the entire case record shall be submitted to the reviewing court. In all cases where privileged and confidential information under this subsection becomes discoverable, admissible, or part of a court record the identity of an individual whose privilege has been involuntarily waived shall be withheld.

Iowa Code § 147.135(2) (second emphasis added).

In *Carolan v. Hill,* we characterized section 147.135 as "a broad statutory privilege for the writings and other records generated by a peer review committee." 553 N.W.2d 882, 886 (Iowa 1996). Cawthorn argues, however, that Mercy waived this privilege by producing the credentialing documents voluntarily, by relying on them in several stages of the prior

trial, and by not objecting to their admission at trial. Mercy actually placed several of the documents into the public record by submitting them with its initial motion for summary judgment. Also, during the subsequent trial, Mercy entered many of the documents into evidence itself. Under these circumstances, Cawthorn contends Mercy has waived the protections of section 147.135.

We disagree. As we noted in *Carolan*, we are dealing with a "statutory" privilege. *Id.* Accordingly, we must review the terms of the statute. *See id.* ("When an asserted privilege is based on a statute, the terms of the statute define the reach of the privilege."). Iowa did not have a common law peer review privilege before section 147.135 was enacted. *See Hutchinson v. Smith Labs., Inc.*, 392 N.W.2d 139, 141 (Iowa 1986).

Iowa's sui generis peer review statute sets forth three basic restrictions, connected by the conjunctive "and." First, peer review records are "privileged and confidential." Iowa Code § 147.135(2). Second, they are "not subject to discovery, subpoena, or other means of legal compulsion for release to a person other than an affected licensee or a peer review committee." *Id.* Finally, subject to exceptions not at issue here, they are "not admissible in evidence." *Id.* Thus, Iowa's law not only specifies that peer review records are privileged, it also contains a separate prohibition on their admissibility in evidence. Even if the *privilege* could have been waived here, the rule against admissibility would remain in effect.

Although Iowa's statute is uniquely worded, a nonwaiver outcome conforms with the result in a number of other jurisdictions. *See, e.g., Emory Clinic v. Houston*, 369 S.E.2d 913, 913 (Ga. 1988) (stating that by a "clear statutory mandate, the General Assembly has placed an absolute embargo upon the discovery and use of all proceedings, records, findings

and recommendations of peer review groups and medical review groups in civil litigation" and "[b]ecause of this affirmative prohibition, the analysis of privileged communications of individuals is inapplicable"); *McCoy v. Hatmaker,* 763 A.2d 1233, 1251 (Md. Ct. Spec. App. 2000) (holding that "materials protected by [the Maryland medical peer review statute] are confidential and not discoverable, and, even when they end up in the hands of the other party to litigation, as they did here, they are inadmissible in court"); *Ayash v. Dana-Farber Cancer Inst.,* 822 N.E.2d 667, 692 n.28 (Mass. 2005) ("In our view, applying waiver principles to peer review communications would significantly undermine the effectiveness of the statute."); *Virmani v. Presbyterian Health Servs. Corp.,* 515 S.E.2d 675, 685–87 (N.C. 1999) (where North Carolina law provided that the records of a medical review committee "shall be confidential and not considered public records . . . and shall not be subject to discovery or introduction into evidence," the documents "continue to be inadmissible as evidence" even after they have been attached to the plaintiff's complaint and entered the public domain); *Powell v. Cmty. Health Sys., Inc.,* 312 S.W.3d 496, 513 (Tenn. 2010) ("declining to engraft a waiver provision onto [the Tennessee peer review statute]"); *Ollman v. Wis. Health Care Liab. Ins. Plan,* 505 N.W.2d 399, 406–07 (Wis. Ct. App. 1993) (rejecting the argument that the health care services review privilege had been waived: "Thus, because the list of exceptions found in [the Wisconsin statute] does not provide for the loss of confidentiality due to disclosure to third parties, we conclude that no such waiver exists under the statute").

Cawthorn cites *State ex rel. Brooks v. Zakaib,* 588 S.E.2d 418 (W. Va. 2003), *Todd v. South Jersey Hospital System,* 152 F.R.D. 676 (D.N.J. 1993), and *Missouri ex rel. St. John's Regional Medical Center v.*

*Dally*, 90 S.W.3d 209 (Mo. Ct. App. 2002), for the proposition that the peer review privilege can be waived. All three cases, in our view, are distinguishable.

*Zakaib* involved a West Virginia statute that expressly recognized waivers: "[A]n individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section." *See Zakaib*, 588 S.E.2d at 426–27 (2003) (quoting W. Va. Code § 30-3C-3). Given the statute's recognition of voluntary waivers, the court held that under some circumstances, an implied waiver could also be given effect even if it did not necessarily meet the statutory requirements for waiver. *Id.* at 428–29. Iowa Code section 147.135, unlike the West Virginia statute, does not allow for voluntary waivers of the peer review privilege.

*Todd* and *Dally* are not on point, either. They hold that, as a matter of fairness, a party cannot simultaneously rely on peer review materials for its defense while asserting the privilege. *Todd*, 152 F.R.D. at 688; *Dally*, 90 S.W.3d at 215–17; *see also Murphy v. Wood*, 667 P.2d 859, 866 (Idaho Ct. App. 1983) (indicating that application of the peer review statute cannot result in a "misrepresentation of fact" being made to the jury); *Powell*, 312 S.W.3d at 513 n.21 (discussing fairness limits). That scenario does not describe the present case: On remand, Mercy disclaimed any reliance on the credentialing file. We have no "sword and shield" problem here.

The wording of Iowa Code section 147.135 can be usefully contrasted with the wording of section 622.10 which governs a number of other privileges, such as the attorney-client privilege and the physician-patient privilege. Thus, section 622.10(1) provides an attorney

or a physician, for example, "shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity." Iowa Code § 622.10(1). Section 622.10(2), however, states, "The prohibition does not apply to cases where the person in whose favor the prohibition is made waives the rights conferred." *Id.* § 622.10(2). Hence, in section 622.10, the general assembly expressly recognized that all protections would be lost once the privilege was waived. But the legislature included no such provision in section 147.135.

Cawthorn argues that the last sentence of section 147.135(2) indicates a hospital may waive the peer review protections and thereby forfeit the right to object to the admission of peer review documents. This sentence provides:

> In all cases where privileged and confidential information under this subsection becomes discoverable, admissible, or part of a court record the identity of an individual whose privilege has been involuntarily waived shall be withheld.

*Id.* 147.135(2). We do not read this sentence in the same way Cawthorn does. Looking at the sentence in context, it follows several narrow exceptions to the broad rules of privilege and inadmissibility set forth at the beginning of section 147.135(2). The exceptions state that peer review information relating to licensee discipline "may be disclosed to an appropriate licensing authority"; that peer review information indicating a crime has been committed "shall be reported to the proper law enforcement agency"; that any final decision of a licensing board in a disciplinary proceeding is "a public record"; and that upon appeal by a licensee, "the entire case record shall be submitted to the reviewing court." *Id.* Thus, under certain specific circumstances, section 147.135(2) provides peer review records will be disclosed. In those

circumstances, the last sentence of section 147.135(2) instructs that "the identity of an individual whose privilege has been involuntarily waived shall be withheld." *Id.* Section 147.135(2) says nothing about voluntary waivers, however. Apart from the enumerated exceptions, we are unwilling to read an additional exception into section 147.135(2)'s general rule against admissibility.[5]

**C. *Day v. Finley Hospital*.** In the routing statement of his principal brief and again in the opening sentence of his reply brief, Cawthorn suggests we should review the court of appeals' holding in *Day* that credentialing files are covered by the peer review protections of section 147.135. *See* Iowa Code § 147.135(2) (defining "peer review records" to mean "all complaint files, investigation files, reports, and other investigative information relating to licensee discipline or professional competence in the possession of a peer review committee or an employee of a peer review committee"); *see also id.* § 147.1(4) (defining "peer review" to mean "evaluation of professional services rendered by a person licensed to practice a profession").[6] We decline to do so. A one-

_____

[5]As Cawthorn points out, although the statute codifying the common law privilege for marital communications in Iowa Code section 622.9 does not expressly contemplate waivers, we have recognized waivers of that privilege in certain "fairness" scenarios. *See, e.g.*, *State v. Klindt*, 389 N.W.2d 670, 675–76 (Iowa 1986) (crimes committed by one spouse against another), *overruled in part on other grounds by State v. Reeves*, 636 N.W.2d 22, 25–26 (Iowa 2001); *State v. Pepples*, 250 N.W.2d 390, 394 (Iowa 1977) (indicating that the marital privilege is waived "when the objecting spouse has earlier made a voluntary revelation of a material part of the communication"). But the present case, again, does not implicate such a fairness scenario, since on remand the credentialing file was placed off limits to *both* parties. *See generally State v. Anderson*, 636 N.W.2d 26, 36–37 (Iowa 2001) (declining to recognize an additional nonstatutory exception to the marital privilege).

[6]State courts in other jurisdictions have addressed this issue under their own peer review laws. *See, e.g., Humana Hosp. Desert Valley v. Super. Ct. of Ariz.*, 742 P.2d 1382, 1388 (Ariz. Ct. App. 1987) (holding that the peer review privilege applies to credential committee files and is not limited to retrospective review of care provided by physicians already practicing in hospitals); *Columbia/JFK Med. Ctr. Ltd. P'ship v. Sanguonchitte*, 920 So.2d 711, 713 (Fla. Dist. Ct. App. 2006) (holding that documents in a physician's credentialing file were protected by the statutory peer review privilege

sentence comment about the proper routing of an appeal, even when repeated in the reply brief, is not sufficient argument. Cawthorn has failed to support his position regarding *Day* by citing authority on appeal, nor did he preserve an argument before the district court that *Day* was wrongly decided. *See* Iowa R. App. P. 6.903(2)(*g*)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). We therefore do not reach the issue.

## IV. Conclusion.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED**.

All justices concur except Wiggins, J., who specially concurs.

---

from discovery in patient's action against hospital for negligent credentialing and other claims); *Dye v. St. John Hosp. & Med. Ctr.*, 584 N.W.2d 747, 749–50 (Mich. Ct. App. 1998) (holding that materials relating to the provision of staff privileges are covered by the peer review privilege); *Tenan v. Huston*, 845 N.E.2d 549, 555 (Ohio Ct. App. 2006) (stating that "the law of Ohio, as currently written by the legislature and interpreted by the courts, does in fact grant hospitals an impenetrable wall of secrecy surrounding the credentialing of doctors"); *Troescher v. Grody*, 869 A.2d 1014, 1021 (Pa. Super. Ct. 2005) (holding that credentialing documents were immune from discovery under the Pennsylvania Peer Review Protection Act); *Mem. Hosp.-The Woodlands v. McCown*, 927 S.W.2d 1, 3 (Tex. 1996) (holding that Texas's statutory peer review privilege extends to the initial credentialing process); *State ex rel. Charles Town Gen. Hosp. v. Sanders*, 556 S.E.2d 85, 94 (W.Va. 2001) (holding that "an application for the issuance or renewal of staff privileges that is created solely for consideration by a hospital credentialing committee is protected by the health care peer review privilege"). *But see Hosp. Auth. of Valdosta and Lowndes Cnty. v. Meeks*, 678 S.E.2d 71, 74–75 (Ga. 2009) (holding that the Georgia peer review privilege does not extend to routine credentialing information that does not involve evaluation of the quality and efficiency of actual medical services); *Bd. of Registration in Med. v. Hallmark Health*, 910 N.E.2d 898, 907 (Mass. 2009) (holding that the work product of the various committees involved in credentialing is protected but documents used by such committees are not necessarily similarly protected); *State ex rel. Faith Hosp. v. Enright*, 706 S.W.2d 852, 855 (Mo. 1986) (holding that Missouri's peer review privilege does not cover credentials committee findings and deliberations unless they specifically concern the health care provided to a patient).

#10–1013, *Cawthorn v. Catholic Health Initiatives*

**WIGGINS, Justice (concurring specially).**

I write to concur specially. I agree with the majority on its analysis of the law of the case issue. I also agree with the outcome; however, I disagree with the majority's analysis of Iowa Code section 147.135(2) (2009). The legislature chose to use the term "privileged and confidential" to restrict the use of peer review records. The legislature not only used this term in section 147.135(2), but also in at least fifteen other statutes. *See, e.g.*, Iowa Code §§ 2.32(10), 35B.10, 80A.17(1), 124.553(3), 155A.39(4), 252.25, 455B.484A(2), 507.14(1), 508E.7(5)(*c*), 508E.15(7)(*c*), 521E.8(1), 521F.9(1), 522B.11(6)(*a*), 542.7(10), 542.8(19).

The majority analyzes this case under terms of common law privilege and waiver. I do not think the majority's analysis is correct. The legislature did not intend to use the words "privileged and confidential" to refer to the law of privilege, waiver, or confidential communications. My review of the statutes incorporating the same language as section 147.135(2) leads me to conclude that, when the legislature uses this language, it is not referring to privilege, waiver, or confidential communications law. Rather, by the use of this language, the legislature intended that these statutes make the protected material unavailable to any person and that no party or court can waive the protection afforded in these statutes. Therefore, the majority's attempt to use the law of privilege, waiver, or confidential communications to analyze the statute is misplaced because the legislature is not referring to the law of privilege, waiver, or confidential communications in these statutes.

Thus, the protected documents under 147.135[7] are not discoverable or admissible in any proceeding. Furthermore, I believe it is the obligation of the possessor of the protected documents to preserve the confidentiality of those documents, even if the documents will support the position of the possessor of the protected documents. By finding the legislature did not intend to incorporate the law of privilege, waiver, or confidential communications in section 147.135, the analysis becomes quite simple and straightforward. We should not complicate an area of the law the legislature made simple.

---

[7]In *Day v. Finley Hospital*, 769 N.W.2d 898, 901 (Iowa Ct. App. 2009), the court of appeals broadly interpreted which materials are protected under 147.135. Neither party raises the correctness of *Day's* broad interpretation; therefore, we will leave that issue for another day.