# IN THE COURT OF APPEALS OF IOWA

No. 14-1738
Filed January 13, 2016

**PATRICIA ELLEN KNOWLTON,**
Plaintiff-Appellant,

**vs.**

**GRINNELL SELECT INSURANCE
COMPANY,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.

Patricia Knowlton appeals the jury verdict awarding her damages for an underinsured motorist claim. **AFFIRMED.**

Judith O'Donohoe of Elwood, O'Donohoe, Braun & White, L.L.P., Charles City, for appellant.

David L. Riley of McCoy, Riley & Shea, P.L.C., Waterloo, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

Patricia Knowlton appeals the jury verdict awarding her damages for an underinsured motorist claim against her insurer Grinnell Select Insurance Company (Grinnell). Knowlton claims multiple errors in virtually every facet of the trial claiming the court erred by: (1) denying evidence of the terms of the underinsurance contract; (2) refusing to admit her claim for medical expenses or denying a new trial based on its ruling; (3) denying her request to take the treating neurosurgeon's deposition during trial, substitute a local non-treating orthopedist or postpone trial; (4) directing a verdict or denying a new trial on claims for future loss of bodily function and/or future pain and suffering; (5) admitting evidence or denying a new trial because of payments made to Knowlton, which were excludable under the collateral source rule; (6) denying a new trial for the jury's failure to award any damages for lost income; (7) denying a new trial based on the cumulative prejudicial effect of its conduct and rulings; and(8) reducing the verdict ex parte without a record or hearing. For the reasons stated herein, we affirm the judgment of the district court.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Knowlton was diagnosed with multiple sclerosis (MS) in 1996. Initially, Knowlton struggled with loss of sensation from the waist down, decreased balance, leg weakness, and loss of bowel and bladder function. Medical records show Knowlton experienced difficulty with short-term memory loss, dizziness, and fatigue. She worried her symptoms would affect her job performance—especially the short-term memory loss.

On June 21, 2011, Knowlton was involved in a car accident when a car in which she was a passenger was struck by a car driven by Shaine Slick. Knowlton initiated the present lawsuit on June 4, 2013, by filing a petition against Grinnell. She claimed the accident was solely the result of Slick's negligence. She claimed Slick was underinsured and did not have sufficient coverage to pay the damages she sustained. Knowlton's underinsurance coverage was $300,000. Grinnell admitted Knowlton was insured and if Slick was underinsured Knowlton was entitled to benefits under the policy.

A trial scheduling order was filed on October 29, 2013. The order required all depositions to be completed sixty-days before trial, Knowlton to disclose her expert witnesses 210 days before trial, and both parties to file a witness and exhibit list seven days before trial. If the parties did not adhere to the deadlines the court reserved the right to impose sanctions.

Knowlton filed two designations of expert witnesses. The first, on November 7, 2013, designated Dr. Brian Weinshenker as the "treating physician for neck," and Dr. Wayne Newkirk as an economist. The second version, filed December 5, 2013, added Thomas Burr, forensic scientist. Knowlton conducted a deposition of Weinshenker on June 11, 2014, at the Mayo Clinic in Minnesota.

A pre-trial conference was scheduled for June 24, 2014. After Knowlton's counsel, Judith O'Donohoe, did not respond as scheduled Grinnell's counsel learned O'Donohoe was on vacation. O'Donohoe's legal assistant also could not reach O'Donohoe. The district court conducted the pre-trial conference in O'Donohoe's absence but with her legal assistant on the phone. The court

confirmed both parties were ready to go forward with trial and reminded the parties of the scheduling deadlines.

On June 24, 2014, Knowlton advised Grinnell of her intention to call Dr. Val Lyons, an orthopedic surgeon, to testify about Knowlton's neck impairment rating. The content of Lyons's opinion was disclosed for the first time on July 7, 2014, two days before trial. The court sustained Grinnell's motion in limine to exclude Lyons's testimony due to its late disclosure.

On July 2, Knowlton filed her witness and exhibit list, an amended version was filed on July 9—the morning of trial. Medical bills were not included as exhibits. Later in the morning of July 9, Knowlton filed a third witness and exhibit list, in which she included three new proposed medical witnesses and medical bills from Mayo Clinic and Mercy Medical Center.

Also on the morning of trial, Grinnell offered to confess judgment in the amount of $100,000, which Knowlton declined. After a five-day trial, the jury returned a verdict for Knowlton in the amount of $75,000. Separate damage awards were granted to Knowlton's three children in the amount of $7500 each. After several post-trial motions, the district court offset the $75,000 by the $50,000 Knowlton had received from Slick's insurance company and entered judgment against Grinnell in the amount of $25,000.

Knowlton appeals.[1]

---

[1] Of the eight issues Knowlton has raised on appeal, she has not preserved error on the following five issues: (Knowlton's issues I and III) Knowlton failed to make an offer of proof after the district court excluded evidence on the terms of the underinsurance contract and the expert medical testimony. "Generally, a ruling sustaining a motion in limine is not a ruling on the evidence; the ruling merely adds a procedural step to the

## II.    STANDARD OF REVIEW

We review the court's evidentiary rulings for an abuse of discretion. *Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d 681, 685 (Iowa 2012). A district court abuses its discretion when its decision rests on grounds or on reasons clearly untenable or to an extent clearly unreasonable. *Id.* There will be no abuse of discretion found unless a party has suffered prejudice. *Id.* The district court is given broad discretion in evidentiary matters, and we will disturb its rulings upon a showing of abuse. *Id.*

Similarly, we review a claim concerning whether the trial court should have given a party's requested jury instruction for an abuse of discretion. *Hagenow v. Schmidt*, 842 N.W.2d 661, 670 (Iowa 2014).

District courts have considerable discretion to allow amendments at any point in the litigation, and we will only reverse the district court's decision if it has abused that discretion. *Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015).

---

offer of evidence. If the evidence is not offered, there is nothing preserved to review on appeal." *Twyford v. Weber*, 220 N.W.2d 919, 922–23 (Iowa 1974); *see also Quad City Bank & Trust v. Jim Kircher & Associates, P.C.*, 804 N.W.2d 83, 91–92 (Iowa 2011). (Knowlton's issue VI) Knowlton did not object to the submission of the damages for lost income to the jury, and therefore she has not preserved error on this issue by mentioning it for the first time in her motion for new trial. *See* Iowa R. Civ. P. 1.924; *Summy v. City of Des Moines*, 708 N.W.2d 333, 338 (Iowa 2006) ("To preserve error for appellate review, a party must alert the district court to the issue at a time when the district court can take corrective action."). (Knowlton's issue VII) Knowlton has not preserved error on her claim the cumulative effect of the district court's conduct caused an unfair trial. Knowlton did not object at any point during trial when the court engaged in the complained of behavior, and since the district court has not ruled on this issue, we decline to address it on appeal. *See Summy*, 708 N.W.2d at 338. Finally, (Knowlton's issue VIII) Knowlton claims there was insufficient evidence in the record to support any reduction in the $75,000 in damages. The parties discussed this issue with the court and Knowlton did not object. Knowlton first objected to this arrangement in a post-trial motion, therefore we decline to address it on appeal. *See id.*

We review the trial court's decision to direct a verdict for the correction of errors of law. *Determan v. Johnson*, 613 N.W.2d 259, 261 (Iowa 2000). A defendant's motion for directed verdict should be denied if there is substantial evidence to support the plaintiff's claim. *Id.* "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.*

## III. DISCUSSION

### A. Medical Expenses

Knowlton claims the district court erred in refusing to submit her claims for medical expenses.

#### 1. Error Preservation

Grinnell contends Knowlton has not preserved error on her claim the court erred in refusing to submit her request for past medical expenses. Both parties filed their proposed jury instructions on July 8, 2014. Knowlton did not include medical expenses in her proposed jury instructions or interrogatories. The morning of trial, Knowlton's counsel decided to include medical expenses.

> The Court: At 8:40 this morning Plaintiff filed its proposed jury instructions. Those proposed jury instructions, there's no mention of a loss for medical expenses. In Plaintiff's petition she seeks damages for sustained injuries and other damages including lost wages, pain and suffering and loss of enjoyment of life. Medical expenses were not pled.
> Ms. O'Donohoe: However, they are in Answers to Interrogatories.
> The Court: They're not pled. Plaintiff did not notify Defendant of any intention to claim medical expenses until twenty minutes before we were to start trial. Plaintiff advised the Court that they were unaware of any subrogation claim for medical expenses despite the fact the insurance company with the claim advised this Court of multiple communications between counsel's

office and the company in writing and also communication by telephone confirming that subrogation claim. I do find that the defendant would be prejudiced by allowing medical bills to be submitted at this time and the exhibit list be modified. Therefore, Plaintiff's application to modify its exhibit list and now claim medical expenses twenty—that were identified twenty minutes before trial started is denied. Ready for openings?

Ms. O'Donohoe: Okay. Your Honor, I do—not right now, but I want to make a record and provide Weinshenker's deposition, my Answer's to interrogatories which clearly showed medical expenses.

The Court: My reason is that you were told by the Court to submit your witness and exhibit list seven days before trial and to identify each and every exhibit. You didn't say you were submitting any medical bills. This morning you told the Court, you told Mr. Riley—you filed a pleading asking for proposed jury instructions that in no way ask for medical bills. And now you're telling the Court and Mr. Riley that you want forty-eight thousand dollars or thirty-five thousand. I don't know what amount. You don't even know what amount. How is the jury going to sort out what amount of medical bills to give when you don't even know what they are?

Ms. O'Donohoe: Well, I know what I think is a valid medical expense.

The Court: Well, we're five minutes away from openings. I think you should know exactly the amount of medical bills claimed.

Ms. O'Donohoe: Well—

The Court: Well, my ruling stands, but you're certainly willing to make an offer of proof and make an argument.

Although Knowlton's attorney made an offer of proof counsel did not make a formal objection to the court's refusal to submit the proposed instruction on past medical expenses as required by Iowa Rule of Civil Procedure 1.924.[2]

---

[2] That rule provides in part:

> Before jury arguments, the court shall give to each counsel a copy of its instructions in their final form, noting this fact of record and granting reasonable time for counsel to make objections, which shall be made and ruled on before arguments to the jury. Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.

Iowa R. Civ. P. 1.924.

However, our supreme court, in *Ostrem v. State Farm Mutual Automotive Insurance Company*, held a jury instruction was properly raised and preserved if the party advised the court what she wanted and why, the court ruled on the matter before arguments, and a record was made on the instruction. 666 N.W.2d 544, 548 (Iowa 2003). Based on the pre-trial exchange between the court and Knowlton's counsel, and Knowlton's offer of proof, Knowlton adequately raised the issue concerning the district court's refusal to submit an instruction on past medical expenses.

### 2. Merits

In support of Knowlton's claim, she raises several arguments on why the court erred. Ultimately, we must decide if the court erred in excluding Knowlton's claim for past medical expenses.

As noted above, the first time Knowlton expressed a desire to claim past medical expenses was a few minutes before trial. The court found Grinnell would be prejudiced by their submission. The court relied on the untimely nature of Knowlton's claim as she did not include medical expenses in any of her pleadings. The language used by the district court tracks with the law concerning amendments to pleadings:

> Iowa Rule of Civil Procedure [1.402(4)] governs the amendment of pleadings. This rule instructs district courts to freely grant leave to amend when required by the interests of justice. Iowa R. Civ. P. [1.402(4)]; *Davis* [*v. Ottumwa Young Men's Christian Ass'n*], 438 N.W.2d [10,] 14 [(Iowa 1989)]. Generally, a party may amend a pleading at any time before a decision is rendered, even after the close of the presentation of the evidence. *Ackerman v. Lauver*, 242 N.W.2d 342, 345 (Iowa 1976). As long as the amendment does not substantially change the issues or

> defense of the case, the court should permit the amendment. *Glenn v. Carlstrom*, 556 N.W.2d 800, 804 (Iowa 1996); *Davis*, 438 N.W.2d at 14; . . . . Even an amendment that substantially changes the issues may still be allowed if the opposing party is not prejudiced or unfairly surprised. *See McElroy* [*v. State*], 637 N.W.2d [488,] 495 [(Iowa 2001)]; *Chao v. City of Waterloo*, 346 N.W.2d 822, 825–26 (Iowa 1984).

*Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 767 (Iowa 2002). "The relevant 'issues' are established either by the initial pleadings . . . or by those matters on which the parties have 'consented' to litigate, either expressly or impliedly." *Allison-Kesley Ag Ctr., Inc. v. Hildebrand*, 485 N.W.2d 841, 846 (Iowa 1992) (citations omitted).

Here, the initial pleadings did not include a request for medical expenses. The first time Knowlton made a claim for past medical expenses was the morning of trial. While the medical records at issue were included in discovery, Grinnell's counsel did not have an opportunity to analyze the records and discern the amount directly related to the injury. Grinnell's counsel stated he relied on the witness and exhibit list and determined medical expenses were not at issue. The district court found Grinnell was prejudiced by Knowlton's eleventh-hour amendment to her pleadings and disallowed her claim for medical expenses. We find the district court did not abuse its discretion.

**B.     Directed Verdict on Future Loss of Function of the Body and/or Future Pain and Suffering**

Knowlton claims the district court erred in granting Grinnell's motion for directed verdict on future loss of function of the body and future pain and suffering.

At the close of Knowlton's case, Grinnell moved for a directed verdict. In its motion, Grinnell argued Knowlton had presented insufficient evidence to support these claims because they included medical questions and no expert testimony had been presented to show the injuries were permanent or may cause future problems for Knowlton. In granting Grinnell's motion the court reasoned:

> Last evening I thoroughly reviewed plaintiff's medical records with an eye on trying to find some support in these records that would justify the submission of future damages, looking at them in the light most favorable to the plaintiff. The last record I could find addresses her—that addresses her true orthopedic issues is April of 2012, more than two years ago. The only other evidence is her subjective statements and the opinions of her family members. Ironically, there is evidence in this record plaintiff suffered a neck fracture in an auto accident while a teenager. She claims no permanency from that injury, but demonstratively presents at trial with severe limitations before this jury without any medical testimony as to why that is. . . . We also don't know from medical support why she was having neck pain—on a scale of one to ten, a three—several years before this accident that she described as constant. All of these things needed to be addressed by medical expert testimony which is absent in the record.
> . . . . It is clear to this Court that if I would have allowed Dr. Lyons to testify, many of these issues would have been addressed and perhaps, rectified. However, that issue has been previously addressed by this Court. It is important to note that no motion to continue was ever filed.

Knowlton claims expert medical testimony is not required to establish a permanent injury if its permanency can be inferred from its nature and sufficient evidence was presented to justify submitting the future damage claim to the jury.

There can be no recovery for future pain and suffering unless reasonably certain it resulted from the injury. *Mercer v. Ridnour*, 218 N.W.2d 625, 627 (Iowa 1974). Expert testimony is often necessary to establish future pain and suffering.

*DeBurkarte v. Louvar*, 393 N.W.2d 131, 140 (Iowa 1986). However, "when pain is suffered right up to the time of trial and there is evidence plaintiff has not fully recovered, future pain and suffering may be submitted to the jury without medical testimony." *Id.* (quoting *Mabrier v. A.M. Servicing Corp.*, 161 N.W.2d 180, 183 (Iowa 1968)). "The mere statement by the plaintiff that she still suffers pain is not sufficient per se to warrant a finding that there will be any future pain or physical suffering because of her injuries." *Daniels v. Bloomquist*, 138 N.W.2d 868, 873 (Iowa 1965). Where "the symptoms from which personal injury may be inferred are subjective only," and plaintiff presents no medical testimony to establish future pain and suffering or permanent injury are "reasonably certain," the trial court need not instruct the jury on that element of damage. *See id.*

Our court has addressed this issue in recent years. In *Brundage v. McElderry*, we affirmed the district court's decision not to instruct the jury on future pain and suffering and future loss of function. No. 00-0811, 2001 WL 725688, at *3 (Iowa Ct. App. June 29, 2001). The claimant seeking future damages presented evidence consisting of his own testimony on pain in his daily life and his mother's testimony concerning her observations of him experiencing pain. *Id.* The treating physician reported the claimant's injury was fully healed, risk of future injury was minimal, and individuals with similar injuries do not experience long-term pain. *Id.*

In *Horn v. Chicoine*, our court affirmed the district court's decision to submit a claim for future pain and suffering to the jury. No. 08-0902, 2009 WL 2169148, at *6 (Iowa Ct. App. July 22, 2009). The evidence supporting the

submission of the claim to the jury included claimant's testimony he had numbness and soreness and can no longer do some household tasks. Additionally, at the time of trial claimant was receiving treatment from an orthopedist who testified the claimant had incurred nine percent impairment to his whole body and had not yet fully recovered from the injury. *Id.* At the time of trial an orthopedic spine specialist had limited the claimant to lifting ten pounds or less. *Id.*

Here, as the district court noted, viewing the evidence presented by Knowlton in the light most favorable to her, there is insufficient evidence to present her future damage claim to the jury. The last orthopedic medical record is from 2012—two years before the accident. Further complicating the issue was the fact Knowlton had suffered a previous neck injury (fracturing her seventh vertebrae as a teenager), and was currently suffering from multiple sclerosis. The only evidence in support of her claim, as noted by the district court, was the subjective evidence presented by Knowlton and the observations of her family. The district court summed up the evidence as follows:

> She walks with a walker and she had to use a high-back chair during trial. But as I waited throughout this trial, not knowing what was coming, I was waiting to hear testimony as to why. What was—what is her condition in her neck which is causing this? Fractures heal; and when they don't, we generally hear testimony from a doctor that these are the complicating factors that are causing lack of motion, the loss of range of motion at this time, these are the issues that are causing the pain, arthritic changes have taken place. Nothing. And with nothing, it leaves me only speculating. And I cannot imagine what the jury is thinking when they watch her in her high-back chair, thinking, what's causing these problems in her neck? You can't just say she broke her neck two years ago. That's it. That's what we have. That's all we have.

We find the district court did not err in granting Grinnell's motion for directed verdict on future loss of function of the body and future pain and suffering.

## C.      Evidence of Payments Made to Knowlton

Knowlton claims the district court erred in admitting evidence of disability payments Knowlton received for multiple sclerosis, which prejudiced her claims for lost income.

### 1.      Error Preservation

Grinnell claims Knowlton has not preserved error on this issue. Knowlton sought to exclude the evidence of payments made by her private insurance policies in her motion in limine. The court ruled on this issue prior to trial and stated:

> The Court: Finally, plaintiff moves to limit any testimony that she received disability benefits following this accident. Plaintiff was diagnosed with multiple sclerosis prior to the accident that is the basis of this action. And my understanding is there's some evidentiary dispute of whether disability payments she began receiving were for the purposes of her multiple sclerosis or for the purpose—or caused by this accident. Is that a fair statement?
> Ms. O'Donohoe: I believe it is, your honor.
> The Court: And because that's an evidentiary issue and a factual issue that, I think, has to be determined by this jury, although disability payments, which are clearly collateral source payments, are normally not admissible, the question here is whether she has lost wages caused by this accident or whether the disability payments would have been made despite this accident. And because of that, defendant has to have a right to discuss that those payments exist. My position on that is reinforced by the plaintiff's own expert who did originally reduce those future damages—or those past lost damages by those insurance payments in his initial report, which leads me to believe even

plaintiff is struggling with how much is caused by that and how much is not. So the jury must be allowed to consider it.

Subsequently, the district court denied Knowlton's motion in limine.

"Generally, a ruling sustaining a motion in limine is not a ruling on the evidence; the ruling merely adds a procedural step to the offer of evidence. *Twyford*, 220 N.W.2d at 922–23; *see also Quad City Bank*, 804 N.W.2d at 91–92. To preserve error after a motion in limine has been denied, it is necessary to make a proper objection at the time the evidence is offered. *Twyford*, 220 N.W.2d at 924.

Knowlton's counsel objected when the disability payments made to Knowlton were mentioned.

> Mr. Riley: Then when your disability came through, could you tell the jury what benefits you started receiving?
> Ms. O'Donohoe: I'm going to object as a violation of the collateral source rule.
> The Court: Based on the ruling in the motion in limine, the objection is overruled. You may answer.

We find Knowlton's objection sufficient for our error preservation rules and address the merits.

### 2. Merits

Knowlton claims the evidence concerning disability benefits made to Knowlton were excludable under the collateral source rule, and admission of evidence of the benefits prejudiced her claim for lost income.

This issue was summarized by the district court in the following fashion:

> The Court: In this case plaintiff is claiming that she was disabled in December of 2011 as a result of this motor vehicle accident. Defendant contends that the medical evidence proves

that she was disabled in December of 2011 not because of the injuries she sustained in this accident but because of her symptoms related to multiple sclerosis. If she was disabled in December of 2011 because of the multiple sclerosis, her disability was not caused by this accident and we're not in an offset situation. The statute, in fact, would not apply in that situation. If, however, she was disabled primarily as a result of her disability—I mean, as a result of her injuries in this accident, any lost wages she was proven would not be offset, pursuant to that statutory provision, by her disability payments. So the issue really is whether or not she was disabled in December as a result of her multiple sclerosis. I drafted instruction 17[3] based on the request made by the plaintiff and I do think it accurately sets forth the law.

Ms. O'Donohoe: I guess I don't have any objection to it as stated.

The Court: I just think it was important for me to identify it. It's somewhat misleading—and I may hear this from Mr. Riley—in that I am saying if you find that she was eligible for and received disability payments based primarily on her symptoms related to MS, despite the injuries, you shall reduce any claim, when, in fact, I can't go so far as to say in this instruction that if you find it was MS alone, because the testimony is it may have accelerated it. So for

---

[3] Instruction 17 states:

You have heard evidence that Patricia Knowlton received disability payments after leaving her employment in December of 2011. If you find that she has proven by a preponderance of the evidence that the primary cause of her separation from employment in December of 2011 was the injuries she sustained in the accident of June 21, 2011, you may not reduce any damages for loss of past income by the disability payments she received. If however, you find that she was eligible for and received disability payments based primarily on her symptoms related to her diagnosis of Multiple Sclerosis despite the injuries she received in the accident of June 11, 2011, you shall reduce any claim for past lost wages by the amount of the disability payments she received subject to the qualifications below.

If you decide her claim for lost wages should be reduced by the disability payments she received, you shall consider the nature and type of the payments made in reference to the purpose for those payments and their usage by Patricia Knowlton as they relate to the replacement of her lost income. If you find payments were made to reimburse her for expenses she incurred for her daily care and rehabilitation and to reimburse her for assistance she received to support her in her activities of daily living, you shall not consider show payments in offsetting her claim for lost wages.

that purpose, I'm going to say that if you find that it's primarily, so they can still want to give some lost wages. Mr. Riley's free to argue that if this was all MS, and if they find all MS, she's not going to get lost wages. We know that. So any further requested instructions, Ms. O'Donohoe, or changes?

       Ms. O'Donohoe: No, your honor.

The collateral source rule is a common law rule of evidence that bars evidence of compensation received by an injured party from a collateral source. *Pexa*, 686 N.W.2d at 156; *Schonberger v. Roberts*, 456 N.W.2d 201, 202 (Iowa 1990). Under the rule a tortfeasor's obligation to make restitution for an injury he or she caused is not reduced by any compensation received by the injured party from a collateral source. *Id.* The rule prevents the jury from reducing the tortfeasor's obligation to make full restitution for the injuries caused by the tortfeasor's negligence. *Id.*

Here, the jury was asked to use the evidence of disability payments made to Knowlton only if it determined they were paid primarily for her symptoms relating to her MS diagnosis. The jury was then permitted to use those payments to reduce the damages for lost income, subject to other qualifications. If the jury determined the payments were made because of injuries Knowlton received from the accident then it was not allowed to use them to reduce damages as that would have violated the collateral source rule. Knowlton has not shown the introduction of the disability payments was prejudicial. Therefore, the district court did not abuse its discretion.

## IV.    CONCLUSION

We find the district court did not abuse its discretion in refusing to submit Knowlton's claim for medical expenses, directing a verdict on her claims for

future loss of bodily function and/or future pain and suffering, and submitting evidence of disability payments paid to Knowlton. Knowlton has failed to preserve error on her other claims. We affirm the judgment of the district court.

**AFFIRMED.**