# IN THE COURT OF APPEALS OF IOWA

No. 19-0031
Filed November 27, 2019

**SLASHFROG, LLC d/b/a ALL DAY HOMES,**
    Plaintiff-Appellant/Cross-Appellee,

**vs.**

**ETHAN QUICK and JORDAN QUICK,**
    Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Robert A. Hutchison, Judge.

Slashfrog, LLC appeals from the dismissal of its breach-of-contract claim and exclusion of its evidence of damages. Ethan and Jordan Quick cross-appeal from the grant of summary judgment on their unconscionability claim and dismissal of their breach-of-contract claim. **AFFIRMED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL.**

S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, for appellant.

Michael J. Streit and Louis R. Hockenberg of Sullivan & Ward, P.C., West Des Moines, for appellees.

Considered by Potterfield, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

In this appeal, we consider a real estate contract dispute between two parties. Slashfrog, LLC appeals and Ethan and Jordan Quick cross-appeal from the rulings of the district court related to the contract terms and resulting breaches. On appeal, Slashfrog argues the court erred in finding it breached the contract and in excluding most of its damages evidence as speculative. On cross-appeal, Quicks contend the court erred in finding the contract was not unconscionable and in finding they also breached the contract. We find no error in granting summary judgment for Slashfrog on Quicks' unconscionability claim and in finding Slashfrog breached the contract. That said, we find Quicks substantially performed their obligations under the contract and award them the earnest money. Because of its cancellation of the contract, we do not reach Slashfrog's arguments about its damages. We thus affirm the rulings of the district court with some modification.

### I. Background Facts and Proceedings.

On January 30, 2017, Slashfrog and Quicks signed a real estate purchase agreement (Agreement). Slashfrog agreed to purchase three separate parcels of real estate (property) in Des Moines from Quicks for a total purchase price of $630,000.[1] Robert Coluzzi signed the Agreement on behalf of Slashfrog as the Member/Manager. The Agreement set June 30 as the closing date. Because the commercial duplex experienced fire damage before execution of the Agreement, the insurer's scope-of-work plan directed the ongoing repairs to the structure.

---

[1] The sale included a twelve-unit apartment complex, two single family units, and a commercial duplex. The commercial property, before sale, suffered fire damage, and the scope of work to repair between Quicks and their contractor was not part of the later agreement between Quicks and Slashfrog.

With the work still in progress, on March 14, Slashfrog wrote Quicks asserting their failure to complete the scope-of-work repairs. Slashfrog contended that failure to complete repairs would be a material breach of the Agreement. Yet Slashfrog offered to accept the property as is for $600,000, a $30,000 reduction in the total purchase price. Quicks responded by asserting the scope of work was not part of the Agreement, most repairs were already complete and accepted by the city, and Slashfrog's contractual remedy if they determined the repairs unacceptable was to void the Agreement. Slashfrog in turn expressed concern the remaining repairs would not pass city inspection, which would make it impossible to close by June 30. It then repeated its offer to accept the property as is for $600,000.

In a May 22 letter, Slashfrog again expressed concern about the quality and completeness of repairs and offered to accept the property as is for $600,000. According to the letter, "Time is of the essence and the need to take immediate action is critical." Slashfrog also asserted Quicks had recently entered into undisclosed leases of the property extending past the closing date in violation of the agreement. In a May 24 letter, Slashfrog repeated its objection to any recent leases extending past the closing date. On June 6, Quicks sent a letter asserting full compliance with the Agreement. They planned to continue to lease the properties but provide notice as required in the Agreement.

And so closing did not occur on June 30 as described in the Agreement. On July 1, Slashfrog sent "a formal notice of default." The notice stated:

> [D]efault has occurred as a result of [Quicks'] failure to abide by the terms of the [Agreement] to permit closing to occur on or before June

30 . . . . The default is a result of but not limited to the following provisions of the [Agreement]
  1) Paragraph 6
  2) Paragraph 7
  3) Paragraph 10
  4) Paragraph 12
  5) Paragraph 15
  6) Paragraph 17(a)
  7) Paragraph 17(c)
  8) Paragraph 17(d)
  9) Paragraph 17(g)
  10) Paragraph (h)
  11) Paragraph 22(c)
  12) Paragraph 22(d)
  13) Paragraph 22(f)
  14) Paragraph 22(h)

Quicks responded with their own letter asserting Slashfrog was in default.

With the contracted closing date behind them, on July 12, Slashfrog sent a letter stating "as a result of the numerous breaches of the Agreement [Slashfrog] will not be closing on the sale of the Property." Slashfrog specifically alleged Quicks breached the Agreement by entering into leases continuing beyond June 30 and failing to maintain the property. Slashfrog advised it would pursue legal remedies under the Agreement unless the parties entered into an amended agreement with new terms. Those terms required closing on September 1, removal of all tenants before closing, and a total purchase price of $580,000. On July 14, Quicks sent their own letter alleging Slashfrog defaulted under the Agreement and the transaction was terminated.

On July 26, Slashfrog sued the Quicks claiming breach of contract and fraudulent inducement theories. Slashfrog sought monetary damages. Quicks answered and filed a counterclaim alleging breach of contract and unconscionability. On October 1, 2018, the court granted partial summary

judgment for Slashfrog, rejecting Quicks' counterclaim the Agreement was unconscionable. Then during the multi-day trial on the remaining issues, Slashfrog withdrew its claim of fraudulent inducement. On December 7, the court entered its ruling, finding both parties breached the contract without excuse and dismissing both parties' breach-of-contract claims.

Slashfrog appeals and Quicks cross-appeal. Slashfrog claims it did not breach the Agreement and, in the event of remand, the court erred in excluding evidence of its damages. Quicks claim that the court erred in granting summary judgment against its claim of unconscionability and that they substantially performed under the Agreement.

## II. Standard of Review.

We review a breach-of-contract claim for correction of errors at law. *Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 839 (Iowa 2019). The district court's factual findings "are binding on us if supported by substantial evidence." *Id.*; Iowa R. App. P. 6.904(3)(a). We review an evidentiary ruling for abuse of discretion. *Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d 681, 685 (Iowa 2012). We review a grant of summary judgment for correction of errors at law. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011). In evaluating summary judgment, courts "view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record." *Nelson v. Lindaman*, 867 N.W.2d 1, 6–7 (Iowa 2015).

**III. Unconscionability.**

New to real estate ventures, Quicks admittedly sought no legal help and failed to read the contract before executing the Agreement. They now complain about the terms. Quicks argue the court erred in granting summary judgment for Slashfrog on their claim the Agreement was unconscionable. As evidence of unconscionability, they point to Slashfrog's role in drafting the Agreement and their less sophisticated position as individuals contracting with a real estate company. As further proof of unfairness, they highlight the provision in the Agreement that provided for "retention of the [$5000] Earnest Money as [Quicks'] sole remedy" to any Slashfrog breach.

> A contract is unconscionable where no person in his or her right senses would make it on the one hand, and no honest and fair person would accept it on the other hand. In considering such claims, we consider the factors of "assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness." However, the doctrine of unconscionability does not exist to rescue parties from bad bargains.
>     This doctrine encompasses both procedural abuses arising from the contract's formation and substantive abuses related to the contract's terms. Procedural unconscionability involves an advantaged party's exploitation of a disadvantaged party's lack of understanding, unequal bargaining power between the parties, as well as the use of fine print and convoluted language. Substantive unconscionability involves whether or not the substantive terms of the agreement are so harsh or oppressive that no person in his or her right senses would make it. Finally, whether an agreement is unconscionable must be determined at the time it was entered.

*C & J Vantage*, 795 N.W.2d at 80–81 (citations omitted).

In granting summary judgment for Slashfrog, the court fully addressed Quicks' arguments:

> The tenets set forth [in *C & J Vantage*, 795 N.W.2d at 80–81,] do not benefit [Quicks] either as to either procedural or substantive due process. [Quicks] assert that they did not have an attorney represent

them during the formation of the purchase agreement, and for purposes of this ruling the Court accepts that assertion as an undisputed fact.  However, it is also undisputed that Quicks had ample time to obtain the services of an attorney, particularly since they chose when to list the property for sale.  If [Quicks] had no attorney, it was because they chose not to have one.  There is no evidence that Slashfrog played any role in the Quicks' decision not to utilize an attorney.  Furthermore, it is undisputed that Quicks did not read the purchase agreement before they signed it.  The remedies provision of the contract is plain on its face.  It is not contained in fine print, nor is it convoluted.  Parties to a contract who do not read the contract cannot be heard to complain the contract is unconscionable for lack of understanding or only the non-diligent would prevail.  Nor can they claim unfair surprise for the same reason.

[Quicks] make substantial claims of oppressive and wrongful conduct on the part of Slashfrog.  However, the conduct complained of all is alleged to have occurred after the parties entered the purchase contract.  If the Quicks prove their allegations, they may establish their claim that plaintiff breached the contract.  But the allegations do not support a claim for unconscionability, set forth in [*C & J Vantage*, 795 N.W.2d at 80–81,] because they concern matters occurring after the purchase agreement was executed.  The Court cannot conclude that the contract is one that no person in his or her right mind would enter.  While Slashfrog is a corporate entity and Quicks are individuals, that in and of itself does not mean that they had unequal bargaining power in entering this transaction, and there is no other evidence to support such a contention.

For these reasons, we agree with the district court.  Viewing the evidence in the light most favorable to Quicks, we find no error in granting summary judgment for Slashfrog on Quicks' claim of unconscionability.

## IV. Breach of Contract.

We next address the breach-of-contract claims.  To prevail on a breach-of-contract claim, a party must prove it "performed all the terms and conditions required under the contract."[2]  *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786

---

[2] The elements of a breach of contract are: "(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular

N.W.2d 839, 846 (Iowa 2010). A party's own breach must be material to defeat its breach-of-contract claim. *See Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 693 (Iowa 1999). The court found both parties' breach-of-contract claims failed because both parties materially breached the Agreement. We separately address each claim.

**A. Slashfrog.** The court found Slashfrog committed multiple breaches of the Agreement. In essence, it failed to "act in accord with the principles of good faith and fair dealing." All contracts contain an implied duty of good faith and fair dealing. *Alta Vista Props., LLC v. Mauer Vision Ctr, PC*, 855 N.W.2d 722, 730 (Iowa 2014). "The underlying principle is that there is an implied covenant that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (quoting *Am. Tower, L.P. v. Local TV Iowa, L.L.C.*, 809 N.W.2d 546, 550 (Iowa Ct. App. 2011)). "The implied covenant of good faith and fair dealing, however, 'does not give rise to new substantive terms that do not otherwise exist in the contract.'" *Id.* at 731 (quoting *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 34 (Iowa 2012)).

The court found Slashfrog foremost "breached the [A]greement by continually insisting on Quicks complying with supposed terms of the [Agreement] which did not exist, especially the Scope of Work and 'time is of the essence' arguments." Slashfrog argues its references to the scope of work were necessary to understand the "improvements" to the commercial duplex that Quicks had to "fully complete[ ] and [have] accepted by the City" under the Agreement. The court

---

way; and (5) that plaintiff has suffered damages as a result of the breach." *Westhoff v. Am. Interins. Exch.,* 250 N.W.2d 404, 408 (Iowa 1977).

relied on the integration clause in the Agreement and the parol evidence rule in finding the scope of work was not part of the Agreement.[3] Regardless of the meaning of "improvements" in the Agreement, the court found Slashfrog's concern over the improvements was "groundless" as the city accepted the repairs on May 23, long before the scheduled closing. Nor does Slashfrog deny it improperly claimed time was of the essence after executing the Agreement. Slashfrog undercut its time-is-of-the-essence argument in its July 12, 2017 offer to extend closing to September 1 in exchange for a $50,000 reduction in the purchase price. And as the court noted, Slashfrog "[i]nexplicably" and completely abandoned any time-is-of-the-essence argument at trial during cross-examination of its attorney.

The court also found Slashfrog "breached the contract with its July 1, 2017 notice of default." This notice simply alleged Quicks breached several provisions of the Agreement without specifying the breach or steps Quicks could take to cure the breach. This notice violated the Agreement's requirement to "[specify] the occurrence and [describe] such default."[4] Additionally, the court observed "Slashfrog was unable to identify at trial what some of the claimed defaults were."

---

[3] "The parol evidence rule is one of substantive law which forbids the use of extrinsic evidence to vary, add to, or subtract from a written agreement. But the rule does not come into play until by interpretation the meaning of the writing is ascertained." *Salsbury v. Nw. Bell Tel. Co.*, 221 N.W.2d 609, 611 (Iowa 1974). Even if Slashfrog argues the court improperly used the parol evidence rule to exclude certain evidence from the record, Slashfrog did not make a sufficient offer of proof to preserve this issue for our review. *Brooks v. Holtz*, 661 N.W.2d 526, 529 (Iowa 2003) ("Our rules of evidence provide that error may not be predicated on a ruling excluding evidence unless 'the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.'" (quoting Iowa R. Evid. 5.103(a)(2)).

[4] The Agreement also allows a party to terminate the Agreement or otherwise seek a contractual remedy for a breach only if "such breach continues for thirty (30) days following written notice" of the breach. We note Slashfrog filed its petition beginning this suit on July 26, 2017, less than thirty days after its default letters dated July 1 and July 12.

Essentially, the court found Slashfrog not credible in explaining why it repeatedly claimed breach and sought price reductions. As the court found, "Coluzzi told [Quick's realtor] during the spring of 2017 that he would end up with the subject property one way or the other. One way was honoring the terms of the purchase agreement; Slashfrog focused throughout on the other way." Slashfrog's actions before and after the scheduled closing—including its groundless concerns over repairs, improper claim that time was of the essence, and deficiently vague notice of default—provide substantial evidence to support the court's finding. Thus, the court did not err in finding Slashfrog breached various provisions, particularly its duty of good faith and fair dealing under the Agreement.

**B. The Quicks.** The court found Quicks breached the Agreement by entering into new leases that would expire after the June 30 closing. Quicks acknowledge they entered into such leases, but they argue their actions regarding the new leases constituted substantial performance under the Agreement. We engage in contract construction to determine the legal effect of the contract. *Peak v. Adams*, 799 N.W.2d 535, 543 (Iowa 2011). "In the construction of written contracts, the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says." *Id.* (quoting Iowa R. App. P. 6.904(3)(n)).

The Agreement required Quicks to provide various property information, including tenant and lease information, to Slashfrog within three days of execution. Quicks were also required to warrant and represent, "There are no leases for the Property which will extend beyond the date of the Closing which have not otherwise been disclosed to [Slashfrog]." The plain language of these provisions

required Quicks—within three days of signing the Agreement—to disclose all leases that were to extend beyond the closing date.

To be certain, any leases entered into after execution of the Agreement on January 30, 2017, would have been undisclosed at the time of contracting and breached the Agreement. That said, Quicks argue they substantially performed all terms required of them under the Agreement. "In the area of contracts, substantial performance is performance without a material breach, and a material breach results in performance that is not substantial." *Flynn Builders, L.C. v. Lande*, 814 N.W.2d 542, 546 (Iowa 2012). To identify a material breach, Iowa uses the Restatement (Second) of Contracts, which

> looks to the injured party and asks to what extent that party will be deprived of the benefit it reasonably expected, account being taken of the possibility of adequate compensation for that part. It also looks to the other party–to the possibility that it will suffer forfeiture, to the likelihood that it will cure its failure, and to the degree that its behavior comported with standards of good faith and fair dealing. Most significant is the extent to which the breach will deprive the injured party of the benefit that it justifiably expected.

*Van Oort Constr. Co.*, 599 N.W.2d at 692 (quoting II E. Allan Farnsworth, Farnsworth on Contracts § 8.16, at 496–97 (2d ed.1998)).

Out of twelve units available for lease, Jordan Quick testified they entered into two new leases after executing the Agreement.[5] In a May 25 email from Quicks to Slashfrog, Quicks asserted all leases were month-to-month and by operation could not extend beyond the June 30, 2017 closing. All the same, Quicks

---

[5] According to the rent roll Quicks provided at closing, they entered into the new leases on May 19 and June 21.

offered to terminate the new May 19 lease prior to closing.[6] Slashfrog apparently never accepted this offer.

While Quicks entered into two new leases before closing, these leases were month-to-month and easily terminated. To vacate all tenants for substantial renovations of the buildings after closing, as Coluzzi testified he planned to do, Slashfrog would have to terminate these new month-to-month leases in the same manner and time as the original properly disclosed leases. Because the two new leases would not have significantly interfered with Slashfrog's stated plans to renovate the buildings, Quicks did not deprive Slashfrog of any benefit it justifiably expected. *See id.* Furthermore, another "justification for allowing a party to suspend future performance is that withholding further performance may be a means of securing future performance by the breaching party." *Id.* at 693. Had Quicks believed their next move in terminating the lease would not be met with another attempt to "bludgeon" a new deal, the breach would likely have been cured. Thus, Quicks are entitled to their sole remedy under the Agreement—retention of the earnest monies.

## V. Slashfrog's Damages Evidence.

Because we find Slashfrog breached the Agreement and do not remand the case, we do not reach the admissibility of Slashfrog's evidence of damages.

---

[6] Quicks' attorney wrote to Slashfrog's attorney: "While Mr. Quick and myself disagree with your interpretation that a month-to-month lease should be considered a lease that extends beyond the date of closing Mr. Quick is willing to serve a 30 day notice on #1 to terminate his tenancy."

**VI. Conclusion.**

We find no error in granting summary judgment in favor of Slashfrog on Quicks' unconscionability claim and in finding Slashfrog breached the contract. However, we find Quicks substantially performed their obligations under the Agreement and award them the earnest money deposit. Given these findings, we do not reach Slashfrog's arguments over its claimed damages. We thus affirm the district court on Slashfrog's appeal and affirm as modified on Quicks' cross-appeal.

**AFFIRMED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL.**